UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| JOHN DOE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 3:17-cv-217 |
| ) | Judge Phillips |
| WILLIAM E. HASLAM, ) | |
| Governor of the State of Tennessee, ) | |
| in his official capacity, and MARK ) | |
| GWYN, Director of the Tennessee ) | |
| Bureau of Investigation, in his official ) | |
| capacity. ) | |
| ) | |
| Defendants. ) | |

## **MEMORANDUM OPINION**

Defendants William E. Haslam ("Governor Haslam") and Mark Gwyn ("Director Gwyn") have filed a motion to dismiss the claims against them pursuant to Fed. R. Civ. P. 12(b)(6) [Doc 8]. Having carefully considered the motion, supporting memorandum [Doc. 9] and plaintiff's response [Doc. 11], the motion is ripe for determination.

### I.  **Relevant Facts**[1]

Plaintiff John Doe is a Tennessee resident who brings this action to challenge the constitutionality of a 2014 Amendment to the Tennessee Sexual Offender and Violent

---

[1]For purposes of a motion to dismiss, the Court takes the factual allegations in the complaint [Doc. 1] as true. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (noting that, "when ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint").

Sexual Offender Registration, Verification and Tracking Act of 2004, Tenn. Code Ann. §§ 40-39-201—218 (2015 Supp.), (hereinafter "the Act"). Governor Haslam is the Governor of the State of Tennessee and is sued in his official capacity [Doc. 1 at ¶ 2]. The Governor is responsible for enforcement of the laws of the State of Tennessee and the supervision of all State departments, including the Tennessee Bureau of Investigation ("TBI") [*Id*. at ¶ 20]. Director Gwyn is the Director of the TBI and is sued in his official capacity [*Id*. at ¶ 3]. The TBI is responsible for maintaining Tennessee's Sex Offender Registry and enforcing the Act [*Id*. at ¶ 21]. The TBI maintains the state's database of sex offenders, maintains an internet-accessible public sex offender registry, registers offenders, develops registration forms, provides statutorily-required notices for registrants, collects registration fees, and coordinates with national law enforcement and the national sex offender registry [*Id*.].

While he was a resident of the State of North Carolina, on August 15, 2006, plaintiff pled guilty to the charge of Indecent Liberties with a Child, in violation of North Carolina Statute 14-202.1 [*Id*. at ¶¶ 8—9]. The victim was described as eleven (11) years old [*Id*.]. Plaintiff asserts that, after spending almost a year in custody, he agreed to the plea "based on a sentencing range of 10-12 months, and the representation that he would be placed on the Sex Offender Registry for a period ten (10) years" [*Id*. at ¶ 11]. After his release from custody, plaintiff registered as a sex offender on the North Carolina Sex Offender Registry on August 31, 2006 [*Id*. at ¶¶ 11—12].

In 2007, plaintiff moved to Tennessee, where he registered as a sex offender and he has reported annually as required [*Id*. at ¶ 13]. Upon the ten (10) year anniversary of his

release from custody in North Carolina, plaintiff contacted the TBI and requested to be removed from the Tennessee Sex Offender Registry [*Id*. at ¶ 16]. The TBI informed plaintiff that it needed additional information to consider his request in light of a 2014 Amendment to the Act, which requires a registered sex offender to remain on the registry for life if the offense involved a victim twelve (12) years of age or younger [*Id*. at ¶ 17]. Plaintiff's counsel provided the requested information to the TBI and again requested that plaintiff be removed from the registry [*Id*. at ¶ 18]. The TBI refused plaintiff's request, citing the 2014 Amendment [*Id*. at ¶ 19].

Tennessee first adopted a sex offender registration law in 1994 [*Id.* at ¶ 22]. The 1994 law was repealed and replaced in 2004 [*Id*. at ¶ 23]. Among the changes included in the 2004 revision, the Act classifies registrants as "sexual offenders" or "violent sexual offenders," with violent sexual offenders required to register for life [*Id*.]. Registrants designated as sexual offenders must report annually, within seven (7) days of their date of birth to verify their registration information, and update fingerprints, palm prints, and photographs [*Id.*]. Registrants who are not subject to the lifetime registration requirement must apply to the TBI for removal from the registry, rather than petition a court [*Id*.]. Any violation of the Act is punishable as a felony, rather than as a misdemeanor [*Id*.].

The Act has been amended several times since 2004, including the 2014 Amendment of which plaintiff complains [*Id*.]. Specifically, Tenn. Code Ann. § 40-39-207 states as follows:

> (g)(1) An offender required to register under this part shall continue to comply with the registration, verification and tracking requirements for the life of that offender, if that offender: …

3

> (C) Has been convicted of an offense in which the victim was a child of twelve (12) years of age or less.

Tenn. Code Ann. § 40-39-207(g)(1)(C) [Doc. 1 at ¶ 24]. Thus, prior to this Amendment and at the time of his plea, plaintiff was only subject to the 10-year requirement to remain on the registry [*Id.* at ¶ 25]. In addition to the numerous requirements imposed on those who are registered, plaintiff claims he "lost a good, well-paying job when it was discovered that he was on the registry after the 10-year period" had expired [*Id.* at ¶¶ 26—27].

Plaintiff asserts that the 2014 Amendment to the Act violates the Ex Post Facto Clause of the United States Constitution and the Due Process Clause of the 14th Amendment to the United States Constitution [*Id.* at ¶¶ 29, 31—34]. Plaintiff seeks declaratory and injunctive relief [Doc. 1 at p. 8].

## II. Standard of Review

Federal Rule of Civil Procedure 8(a)(2) sets out a liberal pleading standard, *Smith v. City of Salem*, 378 F.3d 566, 576 n.1 (6th Cir. 2004), requiring only "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the [opposing party] fair notice of what the . . . claim is and the grounds upon which it rests,'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Detailed factual allegations are not required, but a party's "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions." *Twombly*, 550 U.S. at 555. "[A] formulaic recitation of the elements of a

cause of action will not do," nor will "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In deciding a Rule 12(b)(6) motion to dismiss, a court must construe the complaint in the light most favorable to the plaintiff, accept all factual allegations as true, draw all reasonable inferences in favor of the plaintiff, and determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007) (citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "Determining whether a complaint states a plausible claim for relief will [ultimately] . . . be a context-specific task that requires th[is Court] to draw on its judicial experience and common sense." *Id.* at 679.

## III. Whether Defendants are Proper Party Defendants

Defendants first argue that they are not proper parties to this litigation because they have no direct or specific authority to enforce the provisions of the Act [Doc. 9 at pp. 5—7]. Defendants contend that plaintiff has failed to satisfy the requirements of *Ex Parte Young*, 209 U.S. 123 (1908), for bringing an action against them for injunctive and declaratory relief.

Plaintiff contends that defendants have missed the mark; he is not challenging the 2014 Amendment because he might be exposed to criminal prosecution. Rather, plaintiff reiterates that the basis of his case is that the 2014 Amendment to the Act, requiring him

to register for life, is unconstitutional [Doc. 11 at pp. 5—7]. Plaintiff argues that both Governor Haslam and Director Gwyn are proper defendants in enforcing and executing the Act [*Id*. at pp. 7—9].

The Eleventh Amendment provides sovereign immunity to the states against suits by its own citizens. U.S. Const. amend. XI. The succinct analysis of the *Ex Parte Young* exception to Eleventh Amendment immunity in *Russell v. Lundergan-Grimes*, 784 F.3d 1037 (6th Cir. 2015), properly sets the stage for the arguments in this case:

> [A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." *Will v. Mich. Dep't of State Police,* 491 U.S. 58, 71, 109 S. Ct. 2304, 105 L. Ed. 2d 45 (1989). It is a suit against the State itself. *Kentucky v. Graham,* 473 U.S. 159, 165–66, 105 S. Ct. 3099, 87 L. Ed. 2d 114 (1985). The Eleventh Amendment bars many such suits. *Will,* 491 U.S. at 66, 109 S. Ct. 2304. However, there is an exception to States' sovereign immunity under the doctrine announced in *Ex parte Young,* 209 U.S. 123, 28 S. Ct. 441, 52 L. Ed. 714 (1908), whereby "a suit challenging the constitutionality of a state official's action is not one against the State." *Pennhurst,* 465 U.S. at 102, 104 S. Ct. 900. "In order to fall within the *Ex parte Young* exception, a claim must seek prospective relief to end a continuing violation of federal law." *Diaz v. Mich. Dep't of Corr.,* 703 F.3d 956, 964 (6th Cir. 2013). "*Young* does not apply when a defendant state official has neither enforced nor threatened to enforce the allegedly unconstitutional state statute." *Children's Healthcare is a Legal Duty v. Deters,* 92 F.3d 1412, 1415 (6th Cir. 1996).

*Russell*, 784 F.3d at 1046–47; *see McNeilus Truck & Mfg., Inc. v. Ohio ex rel. Montgomery*, 226 F.3d 429, 437 (6th Cir. 2000) ("[a]n action seeking to enjoin enforcement of an allegedly unconstitutional statute through a suit against state officials charged with its enforcement is not barred by the Eleventh Amendment."). There is no dispute that plaintiff is seeking prospective relief to enjoin an allegedly unconstitutional provision of the Act.

As the defendants note, the *Ex Parte Young* exception "does not reach state officials who lack a 'special relation to the particular statute' and '[are] not expressly directed to see to its enforcement.'" *Russell*, 764 F.3d at 1047 (citing *Young*, 209 U.S. at 157). The Sixth Circuit has noted that the "[g]eneral authority to enforce the laws of the state is not sufficient to make government officials the proper parties to litigation challenging the law." *Id*. at 1048 (quoting *1st Westco Corp. v. Sch. Dist. of Phila.*, 6 F.3d 108, 113 (3rd Cir. 1993)). Thus, the requirement of "some connection with the enforcement of the act" means there must be "a realistic possibility the official will take legal or administrative actions against the plaintiff's interests." *Id.* (citing *Children's Healthcare*, 92 F.3d at 1416). Without a connection to the enforcement of the act, the government official retains Eleventh Amendment immunity from suit. *See Children's Healthcare*, 92 F.3d at 1416.

Governor Haslam argues that he has no specific authority in relation to the Act, other than his general duty to faithfully execute the laws of the State [Doc. 9 at p. 6]. The Court agrees. While plaintiff correctly notes that the Tennessee Legislature has articulated a substantial public interest in the Act [Doc. 11 at p. 8], Governor Haslam's "general authority" in enforcing the Act is not enough. Plaintiff points to no provision in the Act that requires the Governor to take or refrain from any specific action. Nor has the complaint alleged any act or omission beyond Governor Haslam's general responsibility "for the enforcement of the laws of the State of Tennessee and the supervision of all departments" [Doc. 1 at ¶ 20]. Thus, the complaint alleges no more than the Governor's "bare connection to administering a statute" and has not alleged "a realistic possibility" that the Governor will take legal or administrative actions against the plaintiff's interests.

7

*Russell*, 784 F.3d at 1047—48. Accordingly, the Court finds that the complaint fails to state a plausible claim for relief against Governor Haslam and the claims against him will be dismissed.

The Court reaches the opposite conclusion with respect to Director Gwyn. Director Gwyn argues that he "has no authority to institute criminal proceedings or prosecute violators of the Act" and the TBI's duties under the Act are "administrative" [Doc. 9 at p. 6]. However, the Sixth Circuit has plainly stated "*Young's* enforcement element is not confined to criminal actions," but may be met "when there is a realistic possibility the official will take legal or administrative actions against the plaintiff's interests." *Russell*, 784 F.3d at 1048. As set forth in the complaint, it is not merely "a realistic possibility" that the TBI will take legal or administrative action against Plaintiff Doe's interests. Plaintiff claims that the TBI has refused his request to be removed from the state Sex Offender Registry pursuant to the 2014 Amendment of the Act [Doc. 1 at ¶ 19]. In addition to the many registration requirements imposed by the Act, plaintiff has alleged that he lost a good job when it was discovered that he was not removed from the registry [*Id.* at ¶¶ 26—27]. Accordingly, plaintiff has alleged a plausible claim for relief against Director Gwyn in his official capacity.

## IV. Whether the Complaint States a Claim for Violation of the Ex Post Facto Clause

Plaintiff has alleged that the application of the 2014 Amendment of the Act to him violates the Ex Post Facto Clause of the United States Constitution [Doc. 1 at ¶ 29]. The

Constitution provides that "No State shall … pass any … ex post facto Law." U.S. Const. art. I § 10, cl. 1. An Ex Post Facto law is a "retrospective" law that applies "to events occurring before its enactment" and "disadvantage[s] the offender affected by it … by altering the definition of criminal conduct or increasing the punishment for the crime." *Lynce v. Mathis*, 519 U.S. 433, 441 (1997). Upon consideration of a motion to dismiss, the Court must determine whether plaintiff's Ex Post Facto challenge to the Act states a plausible claim for relief. *Iqbal*, 556 U.S. at 678.

Defendant Gwyn argues that the complaint fails to state a claim for relief because the 2014 Amendment to the Act is regulatory and does not impose additional punishment [Doc. 9 at pp. 7—11]. In support of his position, defendant relies on *Smith v. Doe*, 538 U.S. 84 (2003), *Doe v. Bredesen*, 507 F.3d 998 (6th Cir. 2007), *cert. denied*, 555 U.S. 921 (2008), and *Cutshall v. Sundquist*, 193 F.3d 466 (6th Cir. 1999), *cert. denied*, 529 U.S. 1053 (2000), which considered and rejected Ex Post Facto challenges to sex offender registration laws.

In *Smith*, the Supreme Court considered whether the registration and notification requirements of Alaska's sex offender registry law violated the Ex Post Facto Clause. 538 U.S. at 89. In doing so, the Supreme Court established the framework for considering such challenges by adopting what has been described as an "intent – effects" test: (1) did the legislature intend to impose punishment; and (2) if not, is the statutory scheme "so punitive in either purpose or effect as to negate [the State's] intention to deem it civil." *Id*. at 92; *Doe v. Snyder*, 834 F.3d 696, 700 (6th Cir. 2016), *cert. denied*, 2017 WL 4339925 (1997);

*Millard v. Rankin*, No. 13-cv-02406-RPM, 2017 WL 3767796, at *9 (D. Colo. Aug. 31, 2017); *see Cutshall*, 193 F.3d at 477.

The *Smith* Court noted, "'only the clearest proof' will suffice to override legislative intent and transform what has been denominated a civil remedy into a criminal penalty." 538 U.S. at 92 (quoting *Hudson v. United States*, 522 U.S. 93, 100 (1997)). As set forth in the Act, "in making information about certain offenders available to the public, the general assembly does not intend that the information be used to inflict retribution or additional punishment on those offenders." Tenn. Code Ann. § 40-39-201(b)(8). Plaintiff has not argued that the Act was intended to impose punishment. Therefore, in the absence of any evidence or argument to the contrary, the Court accepts for purposes of the instant motion that the Act was not intended to impose punishment. *See Hoffman v. Village of Pleasant Prairie*, 249 F. Supp. 3d 951, 958 (E.D. Wis. 2017) (citing *Smith*, 538 U.S. at 92—93) ("The Court must defer to that statement of intent").

In analyzing the effects of the Act, the Supreme Court has instructed the Court to consider five, non-exhaustive factors:

(1) Does the law inflict what has been regarded in our history and traditions as punishment?

(2) Does it impose an affirmative disability or restraint?

(3) Does it promote the traditional aims of punishment?

(4) Does it have a rational connection to a non-punitive purpose?

(5) Is it excessive with respect to this purpose?

10

*Snyder*, 834 F.3d at 701 (citing *Smith*, 538 U.S. at 97). After considering the Alaska statute in light of these factors, the Supreme Court concluded that the respondents could not show, "much less by the clearest proof, that the effects of the law negate Alaska's intention to establish a civil regulatory scheme. The Act is nonpunitive, and its retroactive application does not violate the *Ex Post Facto* Clause." *Smith*, 538 U.S. at 105—06.

Defendant Gwyn argues that the same reasoning in *Smith* applies to the Act and notes that the Act's registration and reporting requirements have been upheld against previous Ex Post Facto challenges [Doc. 9 at p. 9 (citing *Bredesen* and *Cutshall*)]. In response, plaintiff argues that the cases relied upon by the defendant (*Smith*, *Bredesen*, *Cutshall*) are distinguishable from the instant case as they involved review of only registration and notification requirements. Plaintiff asserts he is challenging the retroactive application of *all* parts of the Act to him, including restrictions on where he can live and work. Thus, the 2014 Amendment, which reclassified him as a lifetime registrant, has placed lifetime restrictions on his liberty that were not part of his plea agreement or understanding in 2006 [Doc. 11 at pp. 13—14]. Thus, plaintiff contends that this case is more analogous to *Snyder*, where the Sixth Circuit held that the Michigan sex offender registry statute was effectively punitive and an unconstitutional Ex Post Facto law.[2] 834 F.3d at 705.

---

[2]Defendant argues that the *Snyder* opinion cannot be relied upon because one panel of the Sixth Circuit cannot overturn another panel decision [Doc. 9 at p. 10]. This argument is without merit. *Snyder* did not overrule a prior panel decision. The *Bredesen* and *Cutshall* decisions reviewed and denied challenges to prior versions of Tennessee's sex offender registry law, while *Snyder* reviewed a challenge to Michigan's sex offender registry law. Thus, *Snyder* did not overrule *Bredesen* and *Cutshall*.

In *Snyder*, the Sixth Circuit reviewed 2006 and 2011 Amendments to Michigan's sex offender registry law, which prohibited registrants from living, working, or "loitering" within 1,000 feet of a school. 834 F.3d at 698. The law classified registrants into three tiers based on the crime of conviction and required registrants to appear in person to update registry information. *Id*. Further, the 2006 and 2011 Amendments applied retroactively to all who were required to register. *Id*. The Sixth Circuit analyzed the Michigan statute pursuant to the "intent – effects" test outlined in *Smith* and concluded that the statute was effectively punitive. *Id*. at 705.

The instant complaint alleges that the 2014 Amendment to the Act "inflicts retroactive punishment on the Plaintiff that did not exist at the time he pled guilty in 2006" [Doc. 1 at ¶ 29]. Specifically, plaintiff claims he "is now subject to a lifetime of restrictions including restrictions on where he may live and work; restrictions on associations, to annual registration requirements, and the stigma and potential of harassment that comes with registration as a sex offender" [*Id.*]. Plaintiff's responsive brief argues that the Act contains many provisions equally as punitive as those analyzed by *Snyder*: it includes restrictions on where registrants can work and live (Tenn. Code Ann. §§ 40-39-211); it imposes strict reporting requirements (Tenn. Code Ann. § 40-39-203) and significant penalties for every violation (Tenn. Code Ann. § 40-39-208); and it classifies offenders based on the offense of conviction without any individualized assessment [Doc. 11 at pp. 16—20]. Plaintiff also alleges that he "lost a good, well-paying job" as a result of remaining on the registry beyond the 10-year mark [Doc. 1 at ¶ 27]. Thus, plaintiff urges this Court to follow the reasoning in *Snyder*.

It is worth noting that *Snyder* involved a review of "a handful of opinions, including an opinion following from a Rule 52 bench trial." 834 F.3d at 698. This Court has only the complaint and the pleadings on the instant motion to review. Accordingly, accepting the allegations of the complaint as true, the Court concludes that the plaintiff has alleged a plausible claim that the 2014 Amendment to the Act is so punitive in effect as to violate the Ex Post Facto Clause. *See Doe v. Miami-Dade Cty.*, 846 F.3d 1180, 1185—86 (11th Cir. 2017). The Court does not, however, express any opinion at this time as to the ultimate merits of plaintiff's Ex Post Facto claim.

V. **Whether the Complaint States a Claim for Violation of the Due Process Clause**

Plaintiff alleges that the 2014 Amendment to the Act violates the Due Process Clause of the 14th Amendment to the Constitution by subjecting him to an enhanced penalty that did not exist at the time of his conviction in 2006 [Doc. 1 at ¶¶ 31—34]. Defendant argues summarily that this claim cannot stand for the same reasons as the Ex Post Facto claim [Doc. 9 at p. 11]. Plaintiff has not addressed this claim at all. In the absence of any meaningful argument or briefing, the Court cannot conclude that plaintiff has failed to state a plausible Due Process claim.

VI. **Conclusion**

For the reasons set forth herein, the defendants' motion to dismiss [Doc. 8] will be **GRANTED in part and DENIED in part**. The claims against Governor Haslam will be

13

**DISMISSED**.  The case will proceed as to the claims against Director Gwyn and an appropriate order will be entered.

                                                          s/ Thomas W. Phillips  
                                                SENIOR UNITED STATES DISTRICT JUDGE