UNITED STATES DISTRIC COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

JOHN DOE,                                    )
                                             )
              Plaintiff,                     )
                                             )
v.                                           )        No. 3:17-cv-217
                                             )        Judge Phillips
DAVID B. RAUSCH, Director of the             )
Tennessee Bureau of Investigation,           )
in his official capacity,                    )
                                             )
              Defendant.                     )

## MEMORANDUM OPINION

This civil action presents a constitutional challenge to the Tennessee Sexual

Offender and Violent Sexual Offender Registration Verification and Tracking Act of 2004

(hereinafter the "Act"), Tenn. Code Ann. §§ 40-39-201 – 40-39-218 (2018).  Pending

before the Court are the cross motions for summary judgment filed by Plaintiff John Doe

and Defendant David B. Rausch, Director of the Tennessee Bureau of Investigation

("TBI") [Docs. 28, 45].  Both motions have been fully briefed [Docs. 31, 40, 48, 51, 54,

57], counsel presented their arguments on March 11, 2019, and the motions are ripe for

determination.

For the reasons set forth herein, the Plaintiff's motion for summary judgment [Doc.

28] will be **GRANTED in part and DENIED in part** and the Defendant's motion for

summary judgment [Doc. 45] will be **GRANTED in part and DENIED in part**.

## I.    Relevant Facts

The facts as set forth in the Amended Complaint are largely undisputed.  In 2006, Plaintiff was charged with several sex offenses involving a minor victim, described as eleven (11) years old, in the State of North Carolina [Doc. 52 at ¶¶ 8—9].[1]  On August 15, 2006, Plaintiff pled guilty to the charge of Indecent Liberties with a Child, in violation of N.C. Stat. 14-202.1 [*Id*. at ¶ 9].  As a consequence of his guilty plea and conviction, Plaintiff was required to and did register as a sex offender on the State of North Carolina's Sex Offender Registry [*Id*. at ¶ 11].  After relocating to Tennessee, Plaintiff was required to and did register as a sex offender on the State of Tennessee's Sex Offender Registry (the "Registry") [*Id.* at ¶ 12].  Plaintiff has continued to report annually with the Registry and complied with the requirements of the Act [*Id*. at ¶ 14].

Plaintiff admits that when he goes in for his annual reporting, he asks the officer of the registering agency whether there have been any changes to the registration form [Doc. 45-2 at p. 8].  Plaintiff is given the opportunity to ask questions and the officer always answers any questions he has [*Id*. at pp. 9—10].  Plaintiff denies that he has had any logistical difficulties with the actual reporting process, other than instances when he has been short on funds and the registering agency has allowed him to pay his annual registration fee late [*Id*. at pp. 10—11].

---

[1]At the initiation of this case, Plaintiff requested and was granted leave to proceed under a pseudonym [*see* Docs. 2, 12].  Accordingly, Plaintiff has been referred to in all publicly-filed documents as "John Doe."

Tennessee first adopted a sex offender registration law in 1994 [Doc. 52 at ¶ 20]. The 1994 law was repealed and replaced in 2004 [*Id*. at ¶ 21]. The Act has been amended several times since 2004, including the 2014 Amendment of which plaintiff complains [*Id*. at ¶ 22]. Prior to the 2014 Amendment, registrants who were not subject to the lifetime registration requirement could apply to the TBI for removal from the Registry after ten years [*Id*. at ¶¶ 21, 23]. In 2014, Tenn. Code Ann. § 40-39-207 was amended to state as follows:

> (g)(1) An offender required to register under this part shall continue to comply with the registration, verification and tracking requirements for the life of that offender, if that offender: …
>
> (C) Has been convicted of an offense in which the victim was a child of twelve (12) years of age or less.

Tenn. Code Ann. § 40-39-207(g)(1)(C). Thus, prior to the 2014 Amendment and at the time of his guilty plea, Plaintiff was required to remain on the registry for only ten (10) years [Doc. 52 at ¶ 23]. The effect of the 2014 Amendment requires that he comply with the Act for life.

Generally speaking, the Act requires sex offenders to provide correct, detailed personal information to the state database of sex offenders, some of which is included in an internet-accessible public sex offender registry [*Id*. at ¶¶ 19, 21]. Offenders must report in-person annually to verify and update their registration information [*Id*. at ¶ 21]. The Act imposes geographic restrictions on where registered offenders may live, work, or "be upon or remain" or "stand [or] sit idly" [*see id.* at ¶ 24; Tenn. Code Ann. §§ 40-39-211(a), (d)]. Registered offenders must provide advance notification of travel outside of the state or

country [*see* Tenn. Code Ann. § 40-39-204(h); Doc. 56 at pp. 14—15]. Failure to comply with the requirements of the Act may subject an offender to fines or felony criminal charges [*see* Tenn. Code Ann. §§ 40-39-208, 40-39-211].

On the ten-year anniversary of his initial registration, Plaintiff contacted the TBI requesting his removal from the Registry [Doc. 52 at ¶ 15]. The TBI informed Plaintiff that it needed additional information based on a 2014 Amendment which required a registered offender to remain on the Registry for life if the offense involved a victim twelve (12) years of age or younger [*Id*. at ¶ 16]. With the assistance of counsel, Plaintiff submitted the requested information [*Id*. at ¶ 17]. The TBI denied Plaintiff's request to be removed from the Registry, citing the 2014 Amendment [*Id*. at ¶ 18].

Prior to his request to be removed from the Registry, the Plaintiff held a good job as a sales representative, which required that he make deliveries within a varying geographical area [Doc. 56 at p. 4]. Plaintiff was "completely straight" with his employer, who was aware of plaintiff's status on the Registry [*Id*. at pp. 6—7]. The company made accommodations for deliveries to places that Plaintiff could not go, such as schools, to be handled by other employees [*Id*. at p. 7]. However, when Plaintiff learned that he would not be removed from the Registry, his employer was no longer willing to continue those accommodations indefinitely and Plaintiff was terminated [*Id*. at pp. 6, 9].

In addition to the job loss, Plaintiff testified that he is not able to attend many family functions that take place in a park or to travel out of state without receiving advance permission from both Tennessee and the visiting state [*Id*. at pp. 12—15]. Plaintiff is not allowed to decorate his house for holidays such as Halloween or Christmas [*Id*. at pp. 16—

17].  Plaintiff complains that his picture is published in certain local newspapers sold at convenience stores – "a Thrifty Nickel-type deal" – that includes a section on individuals listed on the Registry [*Id*. at pp. 19—20].  Finally, Plaintiff complains that his status as a sex offender is listed on his photo identification [*Id*. at p. 20].

The instant case was filed on May 19, 2017 [Doc. 1].  Pursuant to 42 U.S.C. § 1983, Plaintiff claims that the 2014 Amendment imposing lifetime registration on him is an unconstitutional violation of the Ex Post Facto Clause and a violation of the Due Process Clause of the 14th Amendment [Doc. 52 at ¶¶ 27, 29—32].  Plaintiff seeks declaratory and injunctive relief.

## II.     Standard of Review

Summary judgment under Rule 56 of the Federal Rules of Civil Procedure is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The moving party bears the burden of establishing that no genuine issues of material fact exist.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Moore v. Philip Morris Cos.*, 8 F.3d 335, 339 (6th Cir. 1993).  All facts and all inferences to be drawn therefrom must be viewed in the light most favorable to the non-moving party.  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Burchett v. Kiefer*, 310 F.3d 937, 942 (6th Cir. 2002).  "Once the moving party presents evidence sufficient to support a motion under Rule 56, the nonmoving party is not entitled to a trial merely on the basis of allegations."  *Curtis Through Curtis v. Universal Match Corp.*, 778 F. Supp. 1421, 1423 (E.D. Tenn. 1991)

(citing *Celotex*, 477 U.S. 317). To establish a genuine issue as to the existence of a particular element, the non-moving party must point to evidence in the record upon which a reasonable finder of fact could find in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The genuine issue must also be material; that is, it must involve facts that might affect the outcome of the suit under the governing law. *Id.*

The Court's function at the point of summary judgment is limited to determining whether sufficient evidence has been presented to make the issue of fact a proper question for the factfinder. *Id.* at 250. The Court does not weigh the evidence or determine the truth of the matter. *Id.* at 249. Nor does the Court search the record "to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479—80 (6th Cir. 1989). Thus, "the inquiry performed is the threshold inquiry of determining whether there is a need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250.

## III.    Analysis

### A.    Whether Plaintiff's Claims are Time-Barred

Defendant raises a timeliness argument that must be addressed first. Defendant argues that Plaintiff's claims are barred by the one-year statute of limitations for civil rights claims in Tennessee, Tenn. Code Ann. § 28-3-104(a)(1)(B). Defendant argues that Plaintiff's cause of action accrued when the changes to the statute became applicable to him [Doc. 40 at pp. 3—5; Doc. 48 at pp. 4—5]. Because the 2014 Amendment of which

6

he complains became effective on July 1, 2014, Plaintiff knew or should have known at that time that he was subject to the lifetime registration requirement. However, he did not file this action until May 19, 2017, almost three years later.

In response, Plaintiff argues that the discovery rule applies and notes that he did not contact the TBI about removal from the Registry until the ten-year anniversary of his initial registration, or in 2016 [Doc. 51 at pp. 1—3; Doc. 54 at pp. 2—4]. Thus, he argues that he was not harmed until the TBI denied his request for removal from the Registry. Because this action was filed within one year of his rejection for removal from the Registry, Plaintiff contends that this action is timely. Plaintiff also notes that he was not eligible to apply for removal from the Registry until 2016, ten years after his conviction, and thus he could not have sued to correct a "non-existent wrong" prior to that time [Doc. 51 at p. 3; Doc. 54 at p. 3].

It is well settled that in Tennessee claims under 42 U.S.C. § 1983 are subject to a one-year statute of limitations. Tenn. Code Ann. § 28-3-104(a)(1)(B); *Irick v. Ray*, 628 F.3d 787, 789 (6th Cir. 2010) ("civil actions for … injunctive relief brought under the federal civil rights statutes must be commenced within one year of the accrual of the cause of action"); *Roberson v. Tennessee*, 399 F.3d 792, 794 (6th Cir. 2005). However, "the accrual date of a § 1983 claim is a question of federal law that is *not* resolved by reference to state law." *Wallace v. Kato*, 549 U.S. 384, 388 (2007) (emphasis in original). "Under federal law, the limitations period begins to run when a plaintiff knew or should have known of the injury that forms the basis of the claim." *Fox v. DeSoto*, 489 F.3d 227, 233 (6th Cir. 2007). The discovery rule provides that "the statute of limitations commences to

run when the injury occurs or is discovered, or *when in in the exercise of reasonable care and diligence, it should have been discovered.*" *Gilmore v. Davis*, 185 F. App'x 476, 481 (6th Cir. 2006) (emphasis in original) (quoting *McCroskey v. Bryant Air Conditioning Co.*, 524 S.W.2d 487, 494 (Tenn. 1975)); *see Quality Auto Parts Co. v. Bluff City Buick Co.*, 876 S.W.2d 818, 820 (Tenn. 1994).

Defense counsel suggests that the discovery rule does not apply because the harm of which Plaintiff complains – the effect of the 2014 Amendment to him – was not "unknown or unknowable." *See Quality Auto Parts*, 876 S.W.2d at 820. Rather, Defendant argues the impact of the 2014 Amendment was easily known as it was a public act of the Tennessee Legislature. Defendant has not, however, cited any authority holding that citizens are presumed to know the details of all of the laws enacted. [2]

The record contains Plaintiff's 2015 registration form, completed on September 22, 2015, which includes over five pages of instructions and information on compliance with the Act [*see* Doc. 28-1 at pp. 10—20]. These instructions state that offenders may obtain information about removal from the Registry from the TBI website, but there is no information about who or when an individual might be eligible to apply for removal. There is no information in the instructions regarding the 2014 Amendment of which Plaintiff complains, Tenn. Code Ann. § 40-39-207(g)(1)(C), which became effective July 1, 2014.

---

[2]The Court notes that the Act states, "[t]he offender's signature on the TBI registration form creates the presumption that the offender has knowledge of the registration, verification and tracking requirements of this part." Tenn. Code Ann. § 40-39-203(l). Neither party has raised this provision or noted how it might affect the statute of limitations issue. In any event, the plain language of this subsection is limited to the "registration, verification and tracking requirements" of the Act.

Plaintiff testified that when he appears for his annual reporting, he asks the officer of the registering agency whether there have been any changes *to the form* and he is given the opportunity to ask any questions [Doc. 45-2 at pp. 8—9]. The record is silent as to whether the 2014 Amendment to the Act caused any changes to the registration form that could have alerted him to a change in the law. Thus, there is no evidence in the record that Plaintiff was informed in either 2014 or 2015 about the change in the Act requiring him to register for life. *See Holland v. Governor of Ga.*, 669 F. App'x 541, 542 (11th Cir. 2016) ("[t]he statute of limitations in these cases has only started to run after the plaintiff received some form of actual notice").

Even if Plaintiff had learned of the 2014 Amendment, he would not have been eligible to apply for removal from the Registry in 2014 and therefore could not have challenged its effect on him. It appears undisputed that Plaintiff could not have applied for removal from the Registry prior to 2016 and that he filed suit less than one year after his request for removal was denied. Thus, the question is whether Plaintiff knew or should have known of the change in the law prior to 2016. There is simply no evidence in the record that the Plaintiff knew or should have known of the 2014 Amendment prior to 2016. Further, even if he was aware of the change in the law, he could not have been harmed by it prior to the date when he believed he was eligible to apply for removal. Accordingly, the Court does not find that Plaintiff's claim is untimely.

B.  Whether the 2014 Amendment Violates the Constitutional Prohibition
    Against Ex Post Facto Laws

The Constitution provides that "No State shall … pass any … ex post facto Law."

U.S. Const. art. I § 10, cl. 1.  An Ex Post Facto law is a "retrospective" law that applies "to

events occurring before its enactment" and "disadvantage[s] the offender affected by it …

by altering the definition of criminal conduct or increasing the punishment for the crime."

*Lynce v. Mathis*, 519 U.S. 433, 441 (1997); *see Cutshall v. Sundquist*, 193 F.3d 466, 476

(6th Cir. 1999), *cert. denied*, 529 U.S. 1053 (2000) ("[t]he clause is designed to protect

against legislative abuses and to provide fair notice of the consequences of criminal

actions").  The Constitution "does not bar *all* retroactive lawmaking, but only retroactive

punishment."  *Does v. Snyder*, 834 F.3d 696, 699 (6th Cir. 2016), *cert. denied*, 138 S. Ct.

55 (2017).  Relevant to the instant challenge, "[a] statute is enforced retroactively if it

governs conduct that preceded the statute's enactment."  *Shaw v. Patton*, 823 F.3d 556,

560 (10th Cir. 2016) (citing *Stogner v. California*, 539 U.S. 607, 612—13 (2003)).  In the

instant case, Plaintiff challenges the application of the 2014 Amendment and the

requirement of lifetime compliance with the Act to his conduct in 2006.  Thus, there is no

dispute that the 2014 Amendment is being enforced retroactively as to Plaintiff.

Plaintiff leans heavily on the Sixth Circuit's opinion in *Snyder*, which held that the

retroactive application of amendments to the Michigan Sex Offender Registration Act were

unconstitutional.  Plaintiff argues that the 2014 Amendment inflicts punishment, it imposes

an affirmative disability or restraint, it promotes the traditional aims of punishment, it is

not rationally related to a non-punitive purpose, and it is excessive with resprective to the

non-punitive purpose [Doc. 31 at pp. 7—16]. Plaintiff points out that while he did agree to be subject to many provisions of the Act at the time of his guilty plea, he only agreed to comply with them for 10 years, not for life as he is now required to do [Doc. 54 at p. 7]. Thus, Plaintiff argues that the 2014 Amendment is unconstitutional as applied to him [Doc. 31 at p. 10].

Relying on pre-*Snyder* cases[3] and the "intent-effects" analysis, Defendant argues that the Act is not punitive in nature and has no punitive intent; thus, it is not an Ex Post Facto punishment [Doc. 48 at pp. 5—9]. Defendant contends that the *Snyder* decision does not require a finding that Tennessee's Act is unconstitutional because the respective statutes at issue are not identical [*Id.* at pp. 9—10]. Defendant also suggests that if the Court finds the 2014 Amendment to be unconstitutional it should apply the doctrine of elision to sever the offending provision without rendering the entire Act unconstitutional [Doc. 40 at pp. 10—11].

The Court finds it appropriate to begin the analysis with the Supreme Court's decision in *Smith v. Doe*, 538 U.S. 84 (2003). In *Smith*, the Court considered whether the registration and notification requirements of Alaska's sex offender registry law violated the Ex Post Facto Clause. 538 U.S. at 89. In doing so, the Supreme Court established the framework for considering such challenges by applying what has been described as an "intent – effects" test: (1) did the legislature intend to impose punishment; and (2) if not,

---

[3]In support of his position, Defendant relies on *Smith v. Doe*, 538 U.S. 84 (2003), *Doe v. Bredesen*, 507 F.3d 998 (6th Cir. 2007), *cert. denied*, 555 U.S. 921 (2008), and *Cutshall*, 193 F.3d 466 (6th Cir. 1999), the latter two which considered and rejected Ex Post Facto challenges to prior iterations of Tennessee's sex offender registration law.

is the statutory scheme "so punitive in either purpose or effect as to negate [the State's] intention to deem it civil." *Id.* at 92; *Snyder*, 834 F.3d at 700; *Millard v. Rankin*, 265 F. Supp. 3d 1211, 1223 (D. Colo. 2017); *see Cutshall*, 193 F.3d at 477. The parties appear to agree that the "intent – effects" analysis is appropriate to the instant claim and the Court concurs.

> 1. Did the Tennessee Legislature Intend the 2014 Amendment to be Punitive?

The *Smith* Court noted, "'only the clearest proof' will suffice to override legislative intent and transform what has been denominated a civil remedy into a criminal penalty." 538 U.S. at 92 (quoting *Hudson v. United States*, 522 U.S. 93, 100 (1997)). The Act plainly states, "in making information about certain offenders available to the public, the general assembly does not intend that the information be used to inflict retribution or additional punishment on those offenders." Tenn. Code Ann. § 40-39-201(b)(8); *see Ward v. State*, 315 S.W.3d 461, 470 (Tenn. 2010) ("[t]he plain language of this statute expresses a nonpunitive intent to protect the public"). Plaintiff does not really argue that the intent of the Act or the 2014 Amendment is punitive. Therefore, in the absence of any evidence or argument to the contrary, the Court accepts for purposes of the instant motion that the 2014 Amendment to the Act was not intended to impose punishment. *See Hoffman v. Village of Pleasant Prairie*, 249 F. Supp. 3d 951, 958 (E.D. Wis. 2017) (citing *Smith*, 538 U.S. at 92—93) ("The Court must defer to that statement of intent").

2.     <u>Is the 2014 Amendment Punitive in Effect?</u>

In analyzing the effects of the Act, the Supreme Court has instructed lower courts to consider five, non-exhaustive factors:

(1)     Does the law inflict what has been regarded in our history and traditions as punishment?

(2)     Does it impose an affirmative disability or restraint?

(3)     Does it promote the traditional aims of punishment?

(4)     Does it have a rational connection to a non-punitive purpose?

(5)     Is it excessive with respect to this purpose?

*Snyder*, 834 F.3d at 701 (citing *Smith*, 538 U.S. at 97). These factors are "neither exhaustive nor dispositive" but "useful guideposts." *Id*. After considering the Alaska statute in light of these factors, the Supreme Court concluded that the respondents could not show, "much less by the clearest proof, that the effects of the law negate Alaska's intention to establish a civil regulatory scheme. The Act is nonpunitive, and its retroactive application does not violate the *Ex Post Facto* Clause." *Smith*, 538 U.S. at 105—06.

In *Snyder*, the Sixth Circuit reviewed 2006 and 2011 Amendments to Michigan's sex offender registry law, which prohibited registrants from living, working, or "loitering" within 1,000 feet of a school. 834 F.3d at 698. The law classified registrants into three tiers based on the crime of conviction and required registrants to appear in person to update their registry information. *Id*. Further, the 2006 and 2011 Amendments applied retroactively to all who were required to register. *Id*. The Sixth Circuit analyzed the Michigan statute pursuant to the "intent – effects" test outlined in *Smith* and concluded that

the statute was effectively punitive. *Id*. at 705. The *Snyder* court summarized its conclusions as follows:

> A regulatory regime that severely restricts where people can live, work, and "loiter," that categorizes them into tiers ostensibly corresponding to present dangerousness without any individualized assessment thereof, and that requires time-consuming and cumbersome in-person reporting, all supported by – at best – scant evidence that such restrictions serve the professed purpose of keeping Michigan communities safe, is something altogether different from and more troubling than Alaska's first-generation registry law. SORA brands registrants as moral lepers solely on the basis of a prior conviction. It consigns them to years, if not a lifetime, of existence on the margins, not only of society, but often, as the record in this case makes painfully evident, from their own families, with whom, due to school zone restrictions, they may not even live. It directly regulates where registrants may go in their daily lives and compels them to interrupt those lives with great frequency in order to appear in person before law enforcement to report even minor changes to their information.

*Id.*

Defendant points to earlier challenges to Tennessee's sex offender registry law, *Cutshall*, 193 F.3d 466 (6th Cir. 1999), and *Bredesen*, 507 F.3d 998 (6th Cir. 2007), which held that the Act did not violate the Ex Post Facto clause [Doc. 40 at p. 6; Doc. 48 at p. 7]. However, as Plaintiff's counsel correctly notes, those cases involved earlier versions of the Act, fairly described as "first generation" registry laws which simply required sex offenders to register. *See, e.g., Cutshall*, 193 F.3d at 474 ("Cutshall need only notify the TBI where he lives, where he works, and other basic data. He is free to live where he chooses, come and go as he pleases, and seek any employment he wishes."); *Bredesen*, 507 F.3d at 1001 (plaintiff challenged a provision of the 2004 Tennessee Serious and Violent Sex Offender Monitoring Pilot Project Act, not at issue in this case, authorizing the TBI to require certain offenders to wear a global positioning system ("GPS") monitor at all times). Tennessee's

Act has been substantively amended several times since those decisions, including the 2014 Amendment at issue in this case [Doc. 52 at ¶¶ 20—22; Doc. 60 at ¶¶ 20—22]. *See Doe v. Haslam*, Nos. 3:16-cv-02862, 3:17-cv-00264, 2017 WL 5187117, at *19 (M.D. Tenn. Nov. 9, 2017). Many of those amendments have imposed restrictions on where registrants can live, work, or "be upon or remain" or "stand, sit idly or remain." *See* Tenn. Code Ann. § 40-39-211. Thus, the Court does not find that *Cutshall* and *Bredesen* automatically foreclose the instant challenge.

Defendant also argues that *Snyder* is not controlling [Doc. 48 at p. 9], but this Court cannot summarily disregard binding precedent from the Sixth Circuit. *Cf. Doe v. Haslam*, 2017 WL 5187117, at *20 ("Snyder … is the law of this Circuit and is binding on the Court"), *with Clark v. Gwyn*, No. M2018-00655-COA-R3-CV, 2019 WL 1568666, at *7 (Tenn. Ct. App. Apr. 11, 2019) (Tennessee Court of Appeals is "not bound" by the Sixth Circuit's ruling in *Snyder*; "it is merely persuasive authority"). Defendant is correct that the plaintiffs in *Snyder* challenged several provisions of the Michigan sex offender statutes, whereas the instant case deals with a challenge to the Tennessee sex offender law and those laws are not identical. And, Defendant is also correct that there are factual differences in the impact of the Tennessee statute on the Plaintiff and the impact of the Michigan statute on the *Snyder* plaintiffs. Further, the Court notes that the instant case challenges one provision of the Act – the 2014 Amendment which retroactively requires Plaintiff to comply with all other provisions of the Act for life. Nonetheless, the Court finds that a careful review of the analysis in *Snyder* – and other authority – as it relates to the instant record is appropriate.

a.    Does the 2014 Amendment Inflict What Has Been Regarded in History and Tradition as Punishment?

Plaintiff argues that the Act, like the Michigan statute in *Snyder*, resembles the ancient punishments of banishment and shaming by grouping sex offenders into two categories of "sex offenders" and "violent sex offenders."  Plaintiff argues that, pursuant to the 2014 Amendment, he is now treated as a "violent sex offender" who must register for life simply based on the age of the victim, rather than on an individualized assessment of his risk of future violations.  Although Plaintiff agreed at the time of his guilty plea to be subject to the requirements of the Act for a period of ten years, he is now subject to the requirements of the Act for life [Doc. 31 at pp. 10—11].  Defendant points out that Plaintiff is not classified as a "violent sexual offender," rather, he is listed as an "offender against children" and this information is already publicly available based on his conviction of "Indecent Liberties with a Minor" [Doc. 40 at p. 9].

*Snyder* describes legal punishment as follows: (1) it involves pain or other consequences typically considered unpleasant; (2) it follows from an offense against legal rules; (3) it applies to the actual (or supposed) offender; (4) it is intentionally administered by people other than the offender; and (5) it is imposed and administered by an authority constituted by a legal system against which the offense was committed.  834 F.3d at 701 (quoting H.L.A. Hart, *Punishment and Responsibility* 4—5 (1968)).  The *Snyder* court concluded that the Michigan statute specifically resembled the punishment of banishment as it related to the geographical restrictions on where registrants could live or work. *Id.* at 701—702.  Similarly, the *Snyder* court found that the Michigan statute resembled

16

"traditional shaming punishments" by publishing tier classifications based on "the state's estimation of present dangerousness without providing for any individualized assessment." *Id*. at 702. Finally, *Snyder* concluded that the Michigan statute resembles the punishment of "parole/probation" because of the numerous restrictions on where registrants can live and work and the requirement that they report in person, rather than by phone or mail. *Id*. at 703.

In the instant case, the requirements of the Act do not impose pain, but they do impose unpleasant consequences on Plaintiff that flow from a criminal conviction and are administered by the TBI. Yes, Plaintiff's criminal conviction is a matter of public record, but the Act requires Defendant to publish that information, along with much personal information about each registrant – date of birth, home and work addresses, driver's license number, license plate number and description of all vehicles, etc. – on a publicly accessible website. *See* Tenn. Code Ann. 40-39-206(d). Plaintiff testified that his name and photograph are often included in local news publications about sex offenders and his status as a sex offender is printed on his identification. These provisions resemble the traditional punishment of shaming.

More importantly, although Plaintiff lives where he wants to live, unlike the plaintiffs in *Snyder*, the geographic restrictions on where he can work have had a substantial impact on him. Plaintiff testified that he lost a good job because he could not make deliveries to schools and his employer was unwilling to make exceptions for him indefinitely. *See Snyder*, 834 F.3d at 702 ("Sex Offenders are forced to tailor much of their

lives around these school zones, and, …they often have great difficulty in finding a place where they may legally live or work.").

Similarly, Plaintiff cannot attend family gatherings that take place in a public park. He testified, "I'm very close with family, and it's really horrible that I'm not allowed – I've just got to sit at home while everybody is keeping touch" [Doc. 56 at p. 13]. Plaintiff has been forbidden from decorating his house for holidays. As Plaintiff testified, "[y]ou can't call it anything other than punishment when you put somebody under house arrest for a holiday" [Doc. 56 at p. 16]. He has been told by officers on more than one occasion, "[t]hey don't want to see my porch light, they don't want to see decorations, and they better see my face … when they knock on my door, which means I am stuck in my house for the entire day of Halloween" [*Id.* at pp. 16—17]. With respect to this restriction, Plaintiff commented, "I never found that in the rules, but this is a man carrying a gun with handcuffs that can take me to jail. And, you know, yeah, I'll have my day in court, but how long am I going to sit in jail before that?" [*Id.*]. *See Snyder*, 834 F.3d at 703 ("surely something is not 'minor and indirect' just because no one is actually being lugged off in cold irons bound. …those irons are always in the background since failure to comply with these restrictions carries with it the threat of serious punishment, including imprisonment"). Thus, the restrictions of the Act also resemble the traditional punishment of banishment.

Finally, the reporting and travel requirements, similar to those in *Snyder*, are much like the punishment of probation or parole. Registrants must update changes in their information within 48 hours, *see* Tenn. Code Ann. § 40-39-203(a), they must report in person annually, Tenn. Code Ann. § 40-39-204(c), and Plaintiff must obtain advance

permission to travel to another jurisdiction [Doc. 56 at pp. 14—15]. Because of the travel restriction, Plaintiff did not attend his sister's college graduation because it was not "worth going through all the hoops to go up there and turn around and come back" [*Id*. at pp. 15—16]. Registrants must disclose any "electronic mail address information, any instant message, chat or other Internet communication name or identity information that the person uses or intends to use." Tenn. Code Ann. § 40-39-203(a)(7). As another court has noted, while this type of provision is not so restrictive as to prohibit the use of the Internet and social media, the Act provides law enforcement a supervisory tool to monitor registered sex offenders using email and social media. *Millard*, 265 F. Supp. 3d at 1228. Thus, this provision "resembles the supervisory aspects of parole and probation, and complements and continues the states' comprehensive supervision of registered sex offenders even after they are released from the express provisions of their parole or probation." *Id*.

In sum, the Court agrees that the restrictions of the Act are much like traditional punishment, particularly when those restrictions are imposed for life.

      b.      Does the 2014 Amendment Impose an Affirmative Disability or Restraint?

Plaintiff argues that, much like restrictions in *Snyder*, the Act "places innumerable and significant restrictions on registrants" [Doc. 31 at p. 11]. As noted above, the Act places restrictions on where registrants may live, work, or "be upon or remain." Much like the restrictions in *Snyder*, the Act puts "significant restraints on how registrants may live their lives." 834 F.3d at 703. Plaintiff is restricted on where he can live, work, gather with family, travel, and how he can celebrate holidays. He must report in-person annually for

as long as he is on the registry, now for life pursuant to the 2014 Amendment. *See Millard*, 265 F. Supp. 3d at 1229. True, as Defendant points out, Plaintiff lives where he wants to live and he does not have children, thus avoiding some of the obstacles faced by the *Snyder* plaintiffs. Nevertheless, the Act's restrictions are "direct restraints on personal conduct," particularly "since failure to comply with these restrictions carries with it the threat of serious punishment, including imprisonment." *Snyder*, 834 F.3d at 703. This factor also weighs in favor of punishment.

c.      Does the 2014 Amendment Promote the Traditional Aims of Punishment?

Plaintiff argues that the Act promotes the traditional aims of punishment because it serves as a permanent incapacity for someone required to register for life [Doc. 31 at pp. 12—13]. The *Snyder* court opined that the Michigan statute advanced the traditional aims of punishment: incapacitation, retribution, and specific and general deterrence. 834 F.3d at 704. However, the court gave this factor little weight because "many of these goals can also rightly be described as civil and regulatory." *Id*.

While this factor does not strongly weigh in Plaintiff's favor, it is not without some heft. The restrictions on living, working, loitering, and traveling impose certain incapacities on Plaintiff that are now permanent by operation of the 2014 Amendment. The restrictions are retributive as they are imposed based solely on Plaintiff's offense of conviction and not on any present assessment of his potential to reoffend. And some of the Act's restrictions are intended to deter recidivism, such as limiting his access to places

where children may be.  The Court finds that the Act generally promotes the traditional aims of punishment, particularly as those restrictions now apply to Plaintiff for life.

> d.  Does the 2014 Amendment Have a Rational Connection to a Non-Punitive Purpose?

Plaintiff argues that the 2014 Amendment does not have a rational relation to a non-punitive purpose because Defendant cannot present proof that the Amendment accomplishes the legislative findings set forth in the Act.  Plaintiff notes that the Act has no provision for an individualized assessment of whether any registrant is likely to reoffend [Doc. 31 at pp. 14—15].

*Snyder* and *Smith* cited this as "a most significant factor" in determining whether the effects of the statute are punitive.  *Snyder*, 834 F.3d at 704 (quoting *Smith*, 538 U.S. at 102).  The legislative findings set forth in the Act include the following:

- "Repeat sexual offenders, sexual offenders who use physical violence and sexual offenders who prey on children are violent sexual offenders who present an extreme threat to the public safety.  Sexual offenders pose a high risk of engaging in further offenses after release from incarceration or commitment and protection of the public from these offenders is of paramount public importance."

- "It is a compelling and necessary public interest that the public have information concerning persons convicted of sexual offenses … to allow members of the public to adequately protect themselves and their children from these persons."

- "Persons convicted of these sexual offenses have a reduced expectation of privacy because of the public's interest in public safety."

- "…releasing information about offenders under the circumstances specified in this part will further the primary governmental interest of protecting vulnerable populations from potential harm."

- "The registration of offenders … along with the public release of specified information concerning offenders, will further the governmental interests of public safety and public scrutiny of the criminal and mental health systems that deal with these offenders."

- "To protect the safety and general welfare of the people of this state, it is necessary to provide for continued registration of offenders and for the public release of specified information regarding offenders. This policy of authorizing this release is necessary and relevant information about offenders to members of the general public is a means of assuring public protection and shall not be construed as punitive."

Tenn. Code Ann. § 40-39-201(b). Thus, the Act articulates several non-punitive purposes: protecting public safety, reducing recidivism, and public scrutiny of criminal justice and mental health systems that interface with sex offenders.

The difficulty, much like in *Snyder*, is that the present record is bereft of any factual support that the restrictions of the Act accomplish those goals. Defendant has presented no information or studies to show how the residential, work, or travel restrictions of the Act have protected public safety or reduced recidivism by registered offenders. Nor is there any information or attempt to link the restrictions of the Act to the success of the criminal justice or mental health systems in dealing with those offenders. Instead, these

stated legislative purposes appear to be supported by popular stereotypes, *see Snyder*, 834 F.3d at 704—705, rather than any individualized assessment of dangerousness. Most importantly, as applied to Plaintiff, there is no evidence or argument that the restrictions of the Act have kept him from re-offending or that requiring him to comply with the Act for life will do so. *See Hoffman*, 249 F. Supp. 3d at 959 ("[a]n individualized assessment helps to ensure that a statute's particularly harsh disability or restraint is rationally related to a non-punitive purpose") (quoting *Shaw*, 823 F.3d at 575). Rather, they have cost him a good job and isolated him from family gatherings. While the Court does not conclude that the Defendant *cannot* demonstrate that the restrictions of the Act are rationally related to a non-punitive purpose, the Defendant has not done so in this case. *See id.* at 960 ("[t]he lack of evidence eliminates the possibility that the [defendant's] action was rational"). Accordingly, this factor weighs in favor of Plaintiff.

e.     Is the 2014 Amendment Excessive With Respect to This Purpose?

Plaintiff argues that the Act is excessive because the Defendant cannot show that the Act's negative effects are counterbalanced by any positive effects [Doc. 31 at pp. 15—16]. As with the previous factor, the record is silent as to any positive effects of the Act. There is no information on how the living, working, loitering, traveling, and reporting restrictions have improved public safety or prevented recidivism. There is no information in the record on how these restrictions on Plaintiff have brought any positive effects. Nor has there been any attempted argument that requiring Plaintiff's compliance with the Act for life, rather than just ten years, has or will produce any positive effects. *See also Millard*, 265 F. Supp. 3d at 1230 ("[t]hese sweeping registration and disclosure requirements – in

the name of public safety but not linked to a finding that public safety is at risk in a particular case – are excessive in relation to [the statute's] expressed public safety objective"). The Court cannot speculate whether the Defendant *could* produce such information or not. Based on the present record, the Defendant has not shown that the negative effects of the Act are counterbalanced by any positive effects.

   f. Conclusion

  Defendant suggests that the Act's restrictions may inconvenience the Plaintiff, but they do not impose a *constitutional* burden [Doc. 57 at p. 2]. Defendant argues that the instant case is "more akin to *Shaw*" where the Tenth Circuit rejected an Ex Post Facto challenge to the Oklahoma Sex offender Registration Act. The *Shaw* plaintiff challenged the residency, reporting, and loitering restrictions of the Oklahoma statute and the Tenth Circuit concluded that these provisions did not have a punitive effect. 823 F.3d at 560—61, 577. In the instant case, the Plaintiff challenges one provision – the requirement that he must comply with *all* restrictions of the Act for life. While each restriction, considered in isolation, might be characterized as an inconvenience, the Court considers their cumulative lifetime impact on Plaintiff in light of the *Smith* Court's instruction that the above factors are merely "useful guideposts." 538 U.S. at 97.

  In sum, the Court concludes that the actual effect of lifetime compliance with the Act is punitive as it relates to Plaintiff. The Act has limited where he can live, work, gather with family, and travel without any individualized assessment of whether those restrictions are indeed necessary to protect the public from any future crimes he may commit. There has been no showing that the benefits to the State outweigh the negative consequences to

Plaintiff. There has been no individualized attempt to justify the continued imposition of these restrictions on Plaintiff for life. Moreover, the State has not presented any countervailing evidence to refute the Plaintiff's "clearest proof" of the punitive effects of the Act on him. The Court finds that the retroactive imposition of lifetime compliance with the Act is an unconstitutional Ex Post Facto law as applied to the Plaintiff. Plaintiff is entitled to summary judgment on this claim.

Finally, the Court makes plain what has been implicit in the foregoing analysis: the challenge to the 2014 Amendment is an "as applied" challenge and the Court's conclusion is that the 2014 Amendment is unconstitutional as applied to Plaintiff. "In an as-applied challenge, the plaintiff contends that application of the statute in the particular context in which he has acted, or in which he proposes to act, would be unconstitutional." *Women's Medical Prof. Corp. v. Voinovich*, 130 F.3d 187, 193 (6th Cir. 1997), *cert. denied*, 523 U.S. 1036 (1998) (quoting *Ada v. Guam Soc'y of Obstetricians & Gynecologists*, 506 U.S. 1011, 1012 (1992)); *Reno v. Flores*, 507 U.S. 292, 300 (1993) (an as-applied challenge is limited to review of how a statute has been "applied in a particular instance"). Thus, "the constitutional inquiry in an as-applied challenge is limited to the plaintiff's particular situation." *Id.* A statute that is unconstitutional as applied may continue to be enforced in circumstances where it is not unconstitutional. *Id.* Because the Court has concluded that the 2014 Amendment is unconstitutional only as applied to Plaintiff, the Defendant's proposed remedy of elision is not appropriate [Doc. 40 at pp. 10—11].[4]

---

[4]Tennessee courts allow elision, under appropriate circumstances when consistent with the expressed legislative intent, to sever "an unconstitutional portion of a statute and find the

C.    Whether the 2014 Amendment Violates Due Process

Similar to his Ex Post Facto argument, Plaintiff contends that the 2014 Amendment denied his due process right to have a "fair warning" of the punishment he was facing at the time of his guilty plea [Doc. 31 at pp. 16—17].  Defendant reiterates the Ex Post Facto argument that the Act does not impose additional punishment and simply imposes reasonable regulatory measures.  Defendant also points out that any claim of a breached plea agreement would fail as to the State of Tennessee because plaintiff's plea agreement was with the State of North Carolina [Doc. 40 at p. 11].  Defendant further argues that the 2014 Amendment merely requires Plaintiff to comply with the Act – "a law that he knowingly agreed to abide by at the time of this conviction" – for a longer period of time [Doc. 48 at pp. 10—11].  Plaintiff responds that he decided to plead guilty based on the fact that he would have to comply with the Act for ten years, but the State of Tennessee "changed the rules near the end of the game" [Doc. 54 at p. 12].

The Fourteenth Amendment prohibits state actors from depriving an individual of life, liberty, or property without due process of law.  U.S. Const. amend. XIV.  "The Due Process Clause contains both a procedural and a substantive component."  *Doe v. DeWine*, 910 F.3d 842, 851 (6th Cir. 2018).  Plaintiff has not specified whether he is making a procedural or a substantive due process claim, nor have the parties provided much substantive briefing on this claim beyond suggesting that the success or failure of this claim

---

remaining provisions to be constitutional and effective."  *State v. Tester*, 879 S.W.2d 823, 830 (Tenn. 1994); *Outdoor Communications, Inc. v. City of Murfreesboro*, 59 F.3d 171, 1995 WL 39030, at *1 (6th Cir. 1995) (the doctrine of elision "refers to the legal process of severing unconstitutional or 'obnoxious' provisions of a statute so as not to invalidate an entire act").

lies with the success or failure of the Ex Post Facto claim. However, neither party has provided any authority for their implicit argument that the two claims are one and the same. *See John v. Barron*, 897 F.2d 1387, 1393 (7th Cir.), *cert. denied*, 498 U.S. 821 (1990) ("This court is not obligated to research and construct legal arguments open to parties, especially when they are represented by counsel as in this case.").

Reviewing the amended complaint, Plaintiff claims that he "faces enhanced punishment without having been given proper Due Process" [Doc. 52 at ¶ 30] and the 2014 Amendment "has induced a breach" of his plea agreement in violation of his Due Process rights [*Id*. at ¶ 31]. Further, Plaintiff claims the 2014 Amendment "imposes criminal liability on the Plaintiff without the benefit of the Plaintiff having actual knowledge of the liability he is facing" [*Id*. at ¶ 32]. The Court construes these allegations and the arguments set forth above as a procedural due process claim, *i.e.*, that "the defendant acted under the color of state law to deprive the plaintiff of a definite liberty or property interest." *DeWine*, 910 F.3d at 851 (quoting *Mich. Paytel Joint Venture v. City of Detroit*, 287 F.3d 527, 539 (6th Cir. 2002)).[5] Further assuming that the Plaintiff intends to assert that his liberty is infringed by the 2014 Amendment, the Court finds that any such claim is foreclosed by *DeWine* and *Connecticut Dep't of Public Safety v. Doe*, 538 U.S. 1 (2003) (hereinafter "DPS").

---

[5]A substantive due process claim protects "fundamental rights" that are so "implicit in the concept of ordered liberty" that "neither liberty nor justice would exist if they were sacrificed." *Doe v. Mich. Dep't of State Police*, 490 F.3d 491, 499 (6th Cir. 2007) (quoting *Palko v. Conn.*, 302 U.S. 319, 325 (1937)). Plaintiff has not identified a fundamental right at issue and the Supreme Court has cautioned courts against expanding this concept. *Id*. at 500 (citing *Washington v. Glucksberg*, 521 U.S. 702, 720 (1997)).

In *DPS*, the plaintiff challenged Connecticut's sex offender registry law for failing to provide a hearing on the offender's current dangerousness before including the offender on a publicly disseminated registry. *Id*. at 4. The Supreme Court rejected the procedural due process challenge because the Connecticut law categorized offenders based solely on the offense of conviction. *Id*. at 7. Thus, the offender's current dangerousness – or lack thereof – was not relevant to the classification and "due process does not require the opportunity to prove a fact that is not material to the State's statutory scheme." *Id*. at 4, 8.

Similarly, in *DeWine*, the plaintiff challenged her classification as a "sexual predator" under Ohio's sex offender registry law, thus requiring her to comply with the registry law for life. 910 F.3d at 846. Notably, prior to the plaintiff's guilty plea, the Ohio law had a mechanism allowing persons classified as sexual predators to petition the sentencing court for a hearing to reassess their likelihood of reoffending and change their classification. *Id*. However, that mechanism was eliminated by the Ohio legislature in 2003, three years prior to the plaintiff's guilty plea. *Id*. Thus, pursuant to the plain language of the Ohio statute, an offender's classification at the time of sentencing became permanent and could never be removed or terminated. *Id*. at 852. The *DeWine* court concluded that an assessment of the plaintiff's current dangerousness, rather than the assessment at the time of her classification hearing, was not material to the Ohio statutory scheme. *Id*. "In sum, because Doe's registration requirement stems from the determination of her likelihood of reoffending at the time of her classification hearing and is not dependent on her current dangerousness, she has no procedural due process right to a reclassification hearing. Further, the wisdom of Ohio's decision to make the determination

of a sexual offender's future dangerousness permanent is not subject to a procedural due process challenge." *Id*. at 854.

In the instant case, the 2014 Amendment requires lifetime compliance with the Act if the offender "has been convicted of an offense in which the victim was a child of twelve (12) years of age or less." Tenn. Code Ann. 40-39-207(g)(1)(C). There is no assessment, either at the time of conviction or subsequently, as to an offender's current dangerousness or likelihood to reoffend. This provision of Act works automatically based solely on the age of the victim and exempts offenders, like the Plaintiff, from the category of registrants who may apply for termination of the registration requirements after ten years. And, like the statutes at issue in *DPS* and *DeWine*, no fact, other than the age of the victim, is relevant to Plaintiff's classification. *See DPS*, 538 U.S. at 7; *DeWine*, 910 F.3d at 852. Accordingly, the Tennessee Legislature's decision to classify offenders based on the victim's age does not violate Plaintiff's right to procedural due process. *See DPS*, 538 U.S. at 8 ("States are not barred by principles of '*procedural* due process' from drawing such classifications") (emphasis in original). Defendant is entitled to summary judgment on this claim.

## IV. Relief

Plaintiff seeks declaratory and injunctive relief, as well as his attorney fees and costs [Doc. 52 at pp. 9—10]. Specifically, and as it corresponds to the findings above, Plaintiff seeks a declaratory judgment that the application of the 2014 Amendment as to him is an unconstitutional Ex Post Facto law [*Id*. at p. 9]. Plaintiff also seeks a permanent injunction

against the Defendant "from retroactively enforcing the amendment against the Plaintiff" and "commanding the TBI to permanently remove the Plaintiff from the Sex Offender Registry" [*Id.*]. Defendant has not provided any substantive response to the requested relief other than to deny that the Plaintiff is entitled to any relief.

The Court agrees that the declaratory relief sought pursuant to 28 U.S.C. § 2201 as to Plaintiff's Ex Post Facto claim is appropriate. Further, 28 U.S.C. § 2202 permits additional relief, such as injunctive relief, to be awarded pursuant to a declaratory judgment. Pursuant to Fed. R. Civ. P. 65, the Court finds that Plaintiff's request for injunctive relief is appropriate as to the application of the 2014 Amendment, Tenn. Code Ann. § 40-39-207(g)(1)(C), as to him.

However, the Court declines to order the Defendant to remove Plaintiff from the Registry. The Act provides that an offender "may file a request for termination of registration requirements with TBI headquarters in Nashville." Tenn. Code Ann. § 40-39-207(a)(1). Upon receipt of such a request, the TBI is then required to review the offender's file for compliance with the Act and conduct fingerprint and criminal history checks. Tenn. Code Ann. § 40-39-207(b). If the offender has not been convicted of any additional sexual offenses within ten years and "the offender has substantially complied" with the Act, the TBI "shall" remove the offender's name from the Registry. Tenn. Code Ann. § 40-39-207(c). In other words, a request for removal from the Registry is not automatically granted and the Court will not preempt TBI's review of any forthcoming request for removal by the Plaintiff.

Finally, pursuant to 42 U.S.C. § 1988(b), Plaintiff has requested an award of attorney's fees and costs as a prevailing party in claims brought under 42 U.S.C. § 1983. In light of the conclusions set forth above, the Court finds that Plaintiff is a prevailing party as he has obtained at least some relief on the merits of his claims. *See Farrar v. Hobby*, 506 U.S. 103, 111 (1992).

## V.    Conclusion

For the reasons set forth herein, Plaintiff's motion for summary judgment [Doc. 28] will be **GRANTED in part** as to Plaintiff's Ex Post Facto claim and **DENIED in part** as to his due process claim.  Defendant's motion for summary judgment [Doc. 45] will be **GRANTED in part** as to the Plaintiff's due process claim and **DENIED in part** as to Plaintiff's Ex Post Facto claim.  The Court finds that Plaintiff is entitled to declaratory and injunctive relief to be set forth in the accompanying order.  Further, as a prevailing party, Plaintiff is entitled to reasonable attorney's fees to be determined after submission of an appropriate motion and supporting documentation.  An appropriate order will be entered.


    s/ Thomas W. Phillips
    SENIOR UNITED STATES DISTRICT JUDGE